UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNIVERSAL GREEN SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VII PAC SHORES INVESTORS, LLC,<br><br>Defendant. | Case No. C-12-5613-RMW<br><br>**ORDER DENYING PAC SHORES' MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: Docket No. 60] |

Defendant VII Pac Shores Investors, LLC ("Pac Shores") moves for summary judgment. Dkt. No. 60. For the reasons explained below, the court DENIES Pac Shores' motion.

**I. BACKGROUND**

According to the First Amended Complaint ("FAC"), Pac Shores and Plaintiff Universal Green Solutions, LLC ("UGS") in 2010 allegedly entered into two agreements under which UGS was to replace fluorescent light bulbs with LED light bulbs at a Pac Shores property. The first retrofit agreement was a written contract (the "Retrofit Contract") providing for an LED retrofit of one building at 1700 Seaport Boulevard and accompanying parking lots. The second agreement was an oral contract covering three additional buildings. Dkt. No. 59, FAC ¶¶ 9-11. UGS also alleges in the alternative that the Retrofit Contract encompasses a retrofit of all four Pac Shores buildings.

The written Retrofit Contract was prepared initially by Jim Helton, a manager and owner at UGS with no legal training or experience drafting contracts. Dkt. No. 63-6, Helton Decl. ¶ 3. Mr. Helton based the Retrofit Contract on a form contract he found online. *Id*. William Moyer, previously the General Manager for the Pac Shores Center, then made small changes to the Retrofit Contract and forwarded it to Kevin Lee, an asset manager for Pac Shores. Pac Shores' attorneys reviewed the Retrofit Contract and returned it with minor changes. Moyer Decl. ¶ 21. The Retrofit Contract was executed on December 21, 2010. *See* Dkt. No. 63-5, Retrofit Contract.

When Pac Shores chose not to pursue the retrofit, UGS sued, alleging four breach of contract claims, including one claim for the alleged breach of the implied promise of good faith and fair dealing not to do anything that would unfairly interfere with the other party's right to receive the benefits of the contract. *Id*. ¶¶ 19-46. According to Mr. Moyer, between March and May 2011 Pac Shores was in discussions with Mazuma Capital Corp. to secure financing for the LED retrofit. Dkt. No. 63-1, Moyer Decl. ¶¶ 40-53. However, Pac Shores delayed the agreement because of "issues with its own primary lenders as a result of expiring mortgages on the Pac Shores Center." *Id*. ¶ 52. UGS and Pac Shores then agreed to further delays while Pac Shores attempted to refinance its expiring mortgages on the Pac Shores Center. *Id*. ¶ 55. Mr. Moyer explains that, after nearly a year of delay, Pac Shores sold two of its buildings, and was soon thereafter the subject of a hostile takeover by a Blackstone management company called Equity Office. *Id*. ¶¶ 58-62. According to Mr. Moyer, the new ownership had no intention of following through with the LED retrofit. *Id*. ¶ 63; *see also* FAC ¶¶ 13-19.

On December 28, 2012, Pac Shores moved to dismiss UGS's claims for lack of federal diversity jurisdiction, which the court denied on April 5, 2013. Dkt. No. 6 (motion to dismiss); Dkt. No. 18 (order denying motion to dismiss). Pac Shores subsequently filed an answer to UGS's complaint on May 21, 2013. Dkt. No. 21. Pac Shores also moved for leave to file a third-party complaint for express contractual indemnity against Cushman & Wakefield of California, Inc., the property management company responsible for the Pac Shores Center, which the court granted on September 18, 2013. Dkt. No. 35. UGS then moved to amend its complaint to allege its alternative

1 legal theory of breach of contract that the Retrofit Contract covered all four buildings. Dkt. No. 49.

2 The court on February 22, 2014 granted UGS's leave to amend. Dkt. No. 58.

3 Pac Shores now moves for summary judgment on all claims. Dkt. No. 60. UGS filed an opposition, Dkt. No. 63, and Pac Shores filed a reply, Dkt. No. 65. The court held a hearing on the motion for summary judgment on May 2, 2014.

## II. ANALYSIS

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559-60 (2006). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

### A. Breach of Contract Claims

Pac Shores moves for summary judgment on UGS's claims, all of which derive from breach of contract. "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Resolution of the parties' controversy requires the court to interpret the contract at issue.

#### 1. Contract Interpretation

Under California law, it is well settled that the interpretation of a contract is a question of law for the trial court's determination. *Parsons v. Bristol Development Co.*, 62 Cal. 2d 861, 865 (1965); *Heppler v. J.M Peters Co.*, 73 Cal. App. 4th 1265, 1285 (1999); *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1443 (9th Cir. 1986). "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal. 4th 377, 390 (2005). "Such intent is to be inferred, if possible, solely from the written

provisions of the contract." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990). "If contractual language is clear and explicit, it governs." *Bank of the West*, 2 Cal. 4th at 1264.

However, contractual language is not always clear and explicit. In interpreting the contract, a court must first determine whether the contract is ambiguous. *See Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995). A contract provision is considered "ambiguous when it is capable of two or more constructions, both of which are reasonable." *Amerigraphics, Inc. v. Mercury Cas. Co.*, 182 Cal. App. 4th 1538, 1551 (2010). On the other hand, the "mere fact that a word or phrase in a policy may have multiple meanings does not create an ambiguity." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1118 (1999). "Ambiguity cannot be based on a strained instead of reasonable interpretation" of the contract's terms. *McKee v. State Farm Fire & Cas. Co.*, 145 Cal. App. 3d 772, 776 (Ct. App. 1983). The contract must be interpreted as a whole. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003). Further, the court can determine whether the contract is ambiguous on its face or by using extrinsic evidence of the parties' intent. *Oceanside 84, Ltd. v. Fidelity Fed. Bank*, 56 Cal. App. 4th 1441, 1448 (1997); *see also Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 955 (2003). If no parol evidence is introduced to interpret the contract, or if the evidence is not contradictory, the trial court's resolution of the ambiguity is a question of law. *See Winet v. Price*, 4 Cal. App. 4th 1159, 1166 (1992). However, "when two equally plausible interpretations of the language of a contract may be made . . . parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact which precludes summary judgment if the evidence is contradictory." *WYDA Assocs. v. Merner*, 42 Cal. App. 4th 1702, 1710 (1996) (quoting *Walter E. Heller Western Inc. v. Tecrim Corp.*, 196 Cal. App. 3d 149, 158 (1987)).

### 2. Contract Formation

Pac Shores argues that no contract was formed because the Retrofit Contract does not state the price that Pac Shores must pay for the light bulbs. In California, a contract is formed when (1) parties capable of contracting (2) consent (3) to a lawful object (4) for sufficient consideration. Cal. Civ. Code § 1550. "If the price of a commodity in a sales contract is intended to be left to the subsequent agreement of the parties, the purported contract is merely an agreement to agree and

therefore *mudum pactum* until the price is fixed or agreed upon." *California Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 481 (1955).

> However, [t]he law does not favor, but leans against, the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained. Unexpressed provisions of a contract may be inferred from the writing or external facts. Thus it is well settled that a contract need not specify price if it can be objectively determined. . . . The absence of price provisions does not render an otherwise valid contract void. Unless the parties intended to leave the determination of price to future negotiations, courts should make the necessary findings and set the price under the applicable code provisions.

*Id*. at 481-82 (quotations and citations omitted).

Pac Shores is right that the Retrofit Contract does not specify a contract price. However, consistent with *California Lettuce Growers*, the court here infers contract terms from the contract's language and the extrinsic evidence. The Retrofit Contract indicates that UGS's monthly compensation under the financial payback plan would be calibrated so that Pac Shores could maintain a positive cash flow from its energy bill savings. Retrofit Contract § 2.3. The Retrofit Contract further provides a methodology for calculating Pac Shores' savings, *see* Retrofit Contract § 2.12, and multiple attached exhibits detailing Pac Shores' actual savings, *see* Retrofit Contract Exhibits A and D. Moreover, remaining ambiguity may be resolved by parol evidence from Mr. Moyer and Mr. Helton. Both Mr. Moyer and Mr. Helton testify in their declarations that UGS and Pac Shores had agreed upon a price of $806,806.52 for the alleged Phase I and $1,295,860.48 for the alleged Phase II. Moyer Decl. ¶ 26; Helton Decl. ¶ 3. Especially given that the Retrofit Contract was principally drafted by individuals with no legal training, this parol evidence from employees of both Pac Shores and UGS is further proof that a contract existed between Pac Shores and UGS. Therefore, particularly in light of California's policy against "the destruction of contracts because of uncertainty," the Retrofit Contract is not simply an "agreement to agree," but is rather a fully formed contract subject to interpretation based on parol evidence. *California Lettuce Growers*, 45 Cal. 2d at 481-82.

### 3. Breach of Contract

Pac Shores also contends that it is entitled to summary judgment because it did not breach its contract with UGS. The breach UGS alleges is Pac Shores' failure to obtain or accept financing that

ORDER DENYING MSJ
Case No. C-12-5613-RMW
RDS
- 5 -

would allow UGS to proceed with the LED retrofit. Dkt. No. 60-2, McIntosh Decl. Ex. D, UGS's Supplemental Responses to Pac Shores' Interrogatories, at 12. At the hearing on the instant motion, UGS acknowledged that Pac Shores' obtaining financing was a condition precedent to the Retrofit Contract, and that Pac Shores did not breach the Retrofit Contract if it can prove that it made a good faith effort to obtain acceptable financing for the LED retrofit project. Pac Shores takes two alternative positions: first, that financing was not a condition precedent, meaning that UGS did not fulfill its obligations under the Retrofit Contract when it failed to deliver any light bulbs; and second, that if financing was a condition precedent to the Retrofit Contract, Pac Shores made a good faith effort to obtain acceptable financing.

Genuine issues of material fact remain as to each of these issues. As to whether Pac Shores' obtaining financing was a condition precedent to the Retrofit Contract, the Retrofit Contract is unclear, but it does not expressly make financing a condition for performance. UGS, however, presents extrinsic evidence indicating that both parties acted in accordance with financing being a condition precedent to performance of the Retrofit Contract.

The relevant portions of the Retrofit Contract provide as follows:

> 2.2 Client acknowledges and UGS discloses that UGS will be compensated for their consulting and coordination services. Said compensation will be part of the overall agreement and may include compensation from alternate sources including but not limited to public utility companies, local, State and Federal agencies, financial institutions or other organizations and affiliates.
> 2.3 As part of the retrofit package, UGS, with the help of the Client, will work to obtain financing options that, unless otherwise agreed upon, shall consist of monthly payments over time that upon project completion will be equal to or less than the client's current total electric billing when combined with the total monthly bill achieved post installation. . . .

Retrofit Contract §§ 2.2-2.3. This language states that UGS will be compensated, and it separately mentions the possibility of Pac Shores obtaining financing. The Retrofit Contract is thus reasonably susceptible to conflicting interpretations. Given the two sections' proximity, § 2.3 could be read as modifying § 2.2, or it could be read as an unrelated provision upon which UGS's compensation does not depend. Regardless, the contract language does not expressly condition UGS's performance under the Retrofit Contract on Pac Shores' ability to obtain financing.

As the contract language is ambiguous, the court next examines the extrinsic evidence. UGS offers detailed testimony from Mr. Moyer indicating that both parties proceeded under the Retrofit

Contract as if financing was a condition precedent to UGS's performance. Moyer Decl. ¶¶ 30-61. UGS searched for financing arrangements suitable to Pac Shores, some of which Pac Shores pursued, and no testimony yet proffered indicates that UGS intended to go forward with the retrofit and expected to be compensated by Pac Shores in the event that Pac Shores could not obtain satisfactory financing. *Id*. Determining whether Pac Shores obtaining financing was a condition precedent to performance of the Retrofit Contract would require a fact finder to weigh Mr. Moyer's testimony along with any supporting testimony against the language of the Retrofit Contract and any supporting testimony from Pac Shores. As such, a question of material fact remains for the jury.

Furthermore, summary judgment is inappropriate because genuine issues of material fact persist over whether Pac Shores acted in good faith when it allegedly refused financing for the LED retrofit project. Based on Mr. Moyer's testimony regarding Pac Shores' decision to abandon the possible Mazuma financing agreement, which is detailed in the background section of this order, a reasonable jury could find that Pac Shores pursued financing for the LED retrofit project in good faith, but that other financial issues prevented the project's execution. Alternatively, a reasonable jury could find that Pac Shores repudiated the contract in bad faith following the hostile takeover, or that Pac Shores' good faith participation ceased at some earlier time. Therefore, the court denies Pac Shores' motion for summary judgment on this issue as well.

### III.  ORDER

For the foregoing reasons, Pac Shores' motion for summary judgment is DENIED.

Dated: May 15, 2014

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge