United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNIVERSAL GREEN SOLUTIONS, LLC, | Case No. C-12-05613-RMW |
| Plaintiff, | |
| v. | **ORDER FOLLOWING PRETRIAL CONFERENCE** |
| VII PAC SHORES INVESTORS, LLC, | **[Re: Docket Nos. 70-73, 77-88, 90, 92-99, 125, 129-131]** |
| Defendants. | |

| |
|---|
| VII PAC SHORES INVESTORS, LLC, |
| Cross-Complainant, |
| v. |
| CUSHMAN & WAKEFIELD OF CALIFORNIA, INC., |
| Cross-Defendants. |

## I.  CASE MANAGEMENT MATTERS

At the pretrial conference, the parties waived their rights to a jury trial. *See* Dkt. No. 148, Pretrial Conference Transcript, at 6:13-19. The trial between Plaintiff Universal Green Solutions, LLC ("UGS"), and Defendant VII Pac Shores Investors, LLC ("Pac Shores") will be a bench trial.

1    The court ordered the parties to file proposed findings of fact and conclusions of law no later than

2    Thursday, June 12, 2014.

3         Next, the court would like to clarify its policy regarding time limits at trial. At the pretrial

4    conference, the court set time limits of 15 hours per side, including opening statements but not

5    closing arguments. Only the party's own examination of a witness counts against that party's time.

6    For example, if UGS calls a witness and conducts direct examination for 3 hours and Pac Shores

7    cross-examines the witness for 2 hours, UGS is charged with 3 hours of time and Pac Shores is

8    charged with 2 hours of time.

9                                   **II.  EVIDENTIARY OBJECTIONS**

10        The court makes the following rulings on the parties' evidentiary objections as brought in

11   Dkt. Nos. 125, 129, 130, and 131.

12        **Objections to Deposition Testimony of Matthew Burrows**:

13        1.  Overruled

14        2.  Overruled

15        3.  Overruled

16        4.  Overruled

17        5.  Overruled

18        6.  Sustained

19        7.  Sustained

20        8.  Overruled

21        9.  Overruled

22        10. Overruled

23        11. Sustained

24        12. Sustained

25        13. Sustained

26        14. Sustained

27        15. Sustained

28

United States District Court
For the Northern District of California

**Objections to Deposition Testimony of Buddy Zarbock**:

1. Overruled

2. Sustained. However, the court will reconsider the objection if there is a question to which the designated portion of Mr. Zarbock's testimony relates, and if the full question and answer are included in the designated portion of Mr. Zarbock's deposition testimony.

3. Overruled

4. Overruled

5. Overruled

6. Sustained

7. Sustained

**Objections to Exhibits**:

Exhibits 34-36: Deferred. Pac Shores has not yet supplied the court with these exhibits. However, UGS may attempt to lay a foundation for these documents at trial. Pac Shores may then object, at which point the court will rule on the objection.

Exhibits 104-107: Overruled. UGS acknowledges that it only objects to Exhibits 104-107 because it objects to Bryan Burkhart's testimony, and that if the court does not grant UGS's Motion *in Limine* No. 1, UGS's objection should be overruled. Therefore, because the court does not exclude Mr. Burkhart's testimony, the objections to Exhibits 104-107 are overruled.

Exhibit 109: Overruled.

Exhibit 123: Deferred. Counsel for UGS represented at the pretrial conference that UGS was reconsidering its objection to Exhibit 123. The court will therefore not rule on the admissibility of Exhibit 123 at this time.

Exhibit 200: Deferred. The court will consider the admissibility of Exhibit 200 (along with Exhibit 123) at trial. The court is unclear as to whether UGS intends to use Exhibit 200 as substantive evidence of its damages or as a demonstrative exhibit to support testimony of its damages claim.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

### III.  MOTIONS *IN LIMINE*

UGS and Pac Shores bring a total of sixteen motions *in limine* in preparation for trial, which is set to begin on June 16, 2014. The court addresses first UGS's motions *in limine* in order, and then turns to Pac Shores' motions *in limine*. A table at the end of this order summarizes the court's rulings.

### A.  UGS'S MOTIONS *IN LIMINE*

### UGS's Motion *in Limine* No. 1: To Exclude Expert Witness Testimony of Bryan Burkhart

**DENIED.** UGS moves to exclude the testimony of expert Bryan Burkhart on two bases: first, that Mr. Burkhart used inappropriate assumptions in calculating Pac Shores' energy savings from the Retrofit Contract;[1] and second, that Pac Shores was late in serving Mr. Burkhart's expert report.

As to UGS's first argument, UGS contends that Mr. Burkhart's energy savings calculations should be excluded because they do not use the wattage, light bulb counts, energy costs, and other figures that were used in the energy audit performed at the Pac Shores Center and attached as exhibits to the Retrofit Contract. UGS submits that Pac Shores agreed to use the figures in the exhibits to the Retrofit Contract for the purposes of calculating savings pursuant to Section 2.3 of the Retrofit Contract. In support of its position, UGS points to language above both parties' signatures on the exhibits stating that "Client agrees that the wattages provided are accepted as accurate in performing calculations to determine costs and savings" and that "Client agrees that these numbers are accurate in determining the overall calculations in conjunction with the data contained within Exhibit A-1."

However, the court denies UGS's motion to exclude Mr. Burkhart's testimony for using data different than that shown in the exhibits to the Retrofit Contract because it is not clear that UGS and Pac Shores intended the figures in the exhibits to be binding on all future savings calculations. Rather, factual and legal disputes remain over this question. Five observations support the court's

---

[1] The court uses the term "Retrofit Contract" in this order to refer to the nine-page document titled "Authorization to Perform Lighting Audit," and signed on December 21, 2010, which can be found beginning at page 26 of Dkt. No. 74. The parties generally refer to this document as the Retrofit Contract. By using the term "Retrofit Contract," the court expresses no opinion on whether the document is a valid and fully formed contract.

conclusion. First, one of the exhibits itself cautions in the document title that the bulb count and wattage data it uses are "preliminary." Dkt. No. 74, Venardi Decl. Ex. C, Retrofit Contract Ex. A-1(a). Second, the parties agree that a later final audit was conducted several months after the Retrofit Contract was signed. Third, the parties continue to dispute facts surrounding the proper number of bulbs, wattage, energy costs, hours of lighting, and whether the relevant time for measuring this data is the time of the audit, the time of the contract, or when Pac Shores informed UGS that it would not proceed further with the Retrofit Contract. Fourth, the parties represented at the pretrial conference that UGS itself deviates from the figures in the Retrofit Contract in its damages calculation. Finally, the audit was performed only for Building 1700 and the parking lot. If the court determines that the Retrofit Contract includes other buildings, it may be necessary for Mr. Burkhart to calculate energy savings as to the other buildings as well. The logic of UGS's motion would apparently prevent Mr. Burkhart from even attempting that analysis. For all of the foregoing reasons, Mr. Burkhart's calculations are substantially relevant.

As to UGS's argument that Mr. Burkhart's testimony should be excluded because Pac Shores served Mr. Burkhart's expert report eight days late, Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The court is troubled by Mr. Burkhart's later deposition testimony concerning the late disclosure of his report and, more generally, by the apparent lack of justification for Pac Shores' late disclosure. Nonetheless, Pac Shore's failure to disclose Mr. Burkhart's expert report is harmless. Pac Shores agreed to allow UGS to take Mr. Burkhart's deposition four days after the discovery cutoff to give UGS more time with the report. UGS also does not identify any prejudice from Pac Shores' late disclosure.

**UGS's Motion *in Limine* No. 2: To Exclude Expert Witness Testimony of Thomas Tarter**

**GRANTED-IN-PART AND DENIED-IN-PART.** UGS's Motion *in Limine* No. 2 is granted as to Thomas Tarter's opinion number 7 and otherwise denied. Mr. Tarter's summary of opinions in his expert report, while brief, provides a sufficient statement of the "basis and reasons"

for his opinions and the facts considered by Mr. Tarter in forming his opinions. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). To the extent Mr. Tarter's opinions were unclear, UGS was able to and did ask questions of Mr. Tarter in his deposition to more fully understand his opinions. UGS also explored the exhibits on which Mr. Tarter relied in forming his opinions at Mr. Tarter's deposition, finding that he only relied on one additional document not disclosed in his report. Dkt. No. 123, McIntosh Decl. Ex. C, Tarter Depo. at 11:25-12:16. Although full disclosure at the outset is preferable, UGS is informed as to Mr. Tarter's opinions and has the information it needs to effectively cross-examine Mr. Tarter at trial. The court therefore declines to exclude Mr. Tarter's testimony for inadequate disclosure.

However, Mr. Tarter's opinion number 7 provides a legal opinion outside Mr. Tarter's area of expertise. Opinion number 7, in full, states:

> It is my professional opinion that MAZUMA (Document UGS 002077) was not a commitment to provide credit. Language contained in that document repeatedly refers to "Proposal" and further that "we appreciate the opportunity to provide you with a proposal . . . ." Consequently, it was not a commitment but rather it was what it stated "a proposal".

Dkt. No. 74, Venardi Decl., Ex. B to Ex. F, at 10. Mr. Tarter is an expert in the "lending and banking business" and is not a lawyer. *Id.* at 5. Despite this, opinion number 7 expresses a legal opinion as to the binding nature of the Mazuma proposal based not on Mr. Tarter's experience with standard practices in the lending and banking business, but on the language in the proposal. The opinion expressed in opinion number 7 is therefore outside Mr. Tarter's area of expertise, and is thus excluded under Federal Rule of Evidence 702.

**UGS's Motion *in Limine* No. 3: To Exclude Testimony of Buddy Zarbock and Matthew Burrows**

**DENIED.** It appears that Buddy Zarbock and Matthew Burrows are both fact witnesses with personal knowledge of some relevant facts. While Mr. Zarbock and Mr. Burrows both may have testified in their respective depositions that they do not remember particular facts well, or that they do not know the answers to specific questions, their deposition testimony—even as excerpted by UGS in its motion—shows that both Mr. Zarbock and Mr. Burrows have personal knowledge of some relevant facts. *See* Dkt. No. 79, UGS's Amended Motion *in Limine* No. 3, at 3-4. Without

United States District Court
For the Northern District of California

1  knowledge of the specific portions of Mr. Zarbock and Mr. Burrows' deposition testimony that will

2  be read at trial, the court cannot tell whether Pac Shores intends to offer testimony based on sources

3  other than their personal knowledge. Elsewhere in this order, the court rules on UGS's specific

4  objections to Mr. Zarbock and Mr. Burrows' deposition testimony. The court will also consider any

5  further objections UGS has to Mr. Zarbock and Mr. Burrows' designated deposition testimony

6  based upon the witness' lack of personal knowledge if the excerpt Pac Shores intends to read

7  suggests a lack of personal knowledge. Regardless, the court will not exclude the entirety of Mr.

8  Zarbock and Mr. Burrows' testimony, as both witnesses have at least some personal knowledge of

9  relevant facts, as reflected in the portions of their deposition testimony provided to the court.

10

11  **UGS's Motion _in Limine_ No. 4: To Exclude Witnesses from the Courtroom Prior to Testifying**

12          **GRANTED.** This motion was unopposed, and is thus granted.

13

14        **B.  PAC SHORES' MOTIONS _IN LIMINE_**

15  **Pac Shores' Motion _in Limine_ No. 1: To Exclude Testimony from William Moyer, Jim Helton**

16  **and Bert Peinbauer that Mazuma Capital Offered a Loan to Pac Shores**

17        **DENIED.** UGS's lay witnesses are not precluded from using the term "offer" to describe the

18  Mazuma Capital proposal to Pac Shores. Lay witnesses may testify as to their perception of events.

19  Fed. R. Evid. 701. Using terms like "offer" that have legal meaning does not automatically turn lay

20  witnesses' fact testimony into improper legal conclusions. Lay witnesses are of course not permitted

21  to draw legal conclusions, but they are also given latitude in describing events as they perceived

22  them.

23

24  **Pac Shores' Motion _in Limine_ No. 2: To Exclude Evidence of Lost Profits on Loan Deferral**

25  **Agreement**

26        **DENIED.** Pac Shores contends that evidence of UGS's lost profits in the form of loan

27  interest from a loan deferral agreement UGS presented to Pac Shores is inadmissible as overly

28  speculative. However, UGS's evidence of lost profits from the Loan Deferral Agreement is relevant

to UGS's damages if UGS can prove that Pac Shores would have entered into the Loan Deferral Agreement had Pac Shores performed in good faith under the Retrofit Contract. The damages inquiry concerns the alleged counterfactual of calculating UGS's damages under the assumption that Pac Shores performed in good faith. This task necessarily involves some speculation. As the Loan Deferral Agreement was presented to Pac Shores by UGS, the notion that good faith performance would have resulted in UGS and Pac Shores entering into the Loan Deferral Agreement is not so speculative as to be inadmisible at trial.

**Pac Shores' Motion _in Limine_ No. 3: To Exclude Testimony from Jim Helton and Bert Peinbauer that Pac Shores Would Have Been Able to Secure a $2.2 Million Loan Over 6 Years With a Parent Company Guarantee**

   **DENIED.** Jim Helton and Bert Peinbauer have personal knowledge of the financing they sought for Pac Shores. While they may not be experts in the finance field, Mr. Helton and Mr. Peinbauer were involved in UGS's attempt to obtain financing for Pac Shores pursuant to the Retrofit Contract. As such, Mr. Helton and Mr. Peinbauer can testify as to the facts surrounding UGS's attempt to obtain financing, including their knowledge of any potential parent company guarantee. As the court held in ruling on UGS's Motion _in Limine_ No. 3, Pac Shores can cross-examine Mr. Helton and Mr. Peinbauer to explore the extent of their knowledge and attempt to discredit them. Regardless, at least some of Mr. Helton and Mr. Peinbauer's testimony is not inadmissible for lack of personal knowledge.

**Pac Shores' Motion _in Limine_ No. 4: To Exclude Evidence of Lost Origination Fees**

   **DENIED.** Resolution of this motion is nearly identical to resolution of Pac Shores' Motion _in Limine_ No. 2. If UGS can prove that good faith performance of the Retrofit Contract would have resulted in Pac Shores securing financing, UGS may offer evidence as to any origination fee it would have received as a part of the financing arrangement. Of course, UGS must have some evidentiary basis for claiming that it would have received an origination fee, and it must present some evidence of the amount of the fee, but that sort of evidentiary proof is required for any typical

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    damages claim. The court cannot before hearing the testimony at trial determine that such evidence

2    is so speculative that the court must prophylactically prevent UGS from presenting evidence of lost

3    origination fees at trial.

4

5    **Pac Shores' Motion *in Limine* No. 5: To Exclude Testimony from William Moyer re: Various**

6    **Legal Conclusions**

7         **DENIED.** As a lay witness, Mr. Moyer may testify as to facts of which he has personal

8    knowledge. Fed. R. Evid. 701. This includes testimony as to Mr. Moyer's perception of events. *Id*.

9    None of the portions of Mr. Moyer's declaration cited by Pac Shores contain inappropriate legal

10   conclusions. As stated in the court's ruling on Pac Shores' Motion *in Limine* No. 1, using terms like

11   "offer" that have legal meaning does not automatically turn lay witnesses' fact testimony into

12   improper legal conclusions. If Mr. Moyer at trial improperly draws legal conclusions in his

13   testimony, counsel may object and the court will then consider the specific objection.

14

15   **Pac Shores' Motion *in Limine* No. 6: To Preclude Plaintiff's Rebuttal Experts from Testifying**

16   **in Plaintiff's Case-in-Chief and to Limit Testimony Until After Defendant's Expert Has**

17   **Testified in its Case**

18        **GRANTED-IN-PART and DENIED-IN-PART.** Pac Shores' motion is granted as to Mr.

19   Tarter and Mr. Fried and denied as to Mr. Borgioli. UGS does not oppose Pac Shores' motion as to

20   Mr. Tarter and Mr. Fried, but it argues that Mr. Borgioli is a percipient witness who should be

21   allowed to testify in UGS's case-in-chief. UGS further represents that it is willing to limit Mr.

22   Borgioli's testimony to only those facts for which he has personal knowledge.

23        Mr. Borgioli was originally disclosed as a non-retained expert witness. UGS now offers to

24   cure any prejudice from his late disclosure as a percipient witness, agreeing to produce Mr. Borgioli

25   for deposition at Pac Shores' convenience. UGS also represents that both parties have been taking

26   depositions in this case well past the discovery cutoff date and that some witnesses still have yet to

27   be deposed, so while having to take a deposition this late in the case would normally constitute

28   sufficient prejudice, having to take another deposition this late in this particular case does not.

United States District Court
For the Northern District of California

1   Furthermore, as noted in the court's ruling on UGS's Motion *in Limine* No. 1, Pac Shores produced

2   Bryan Burkhart's expert report late and cured any potential prejudice by allowing UGS to take Mr.

3   Burkhart's deposition after the discovery cutoff. There is little reason why the court should bar UGS

4   from doing the same with Mr. Borgioli. Finally, the court questions the relevance of Mr. Borgioli's

5   likely testimony, but the court will not preclude Mr. Borgioli from testifying in UGS's case-in-chief

6   if his testimony is based on personal knowledge of relevant facts and is not speculative. UGS may

7   present Mr. Borgioli's testimony as to relevant facts of which he has personal knowledge pursuant

8   to Federal Rule of Evidence 701. As with any other witness, the court will rule on objections to

9   specific questions and answers at trial.

10          As noted at the pretrial conference, the court conditions allowance of Mr. Borgioli's

11  testimony on UGS making Mr. Borgioli available for deposition before trial at a time and place

12  convenient to Pac Shores.

13

14  **Pac Shores' Motion *in Limine* No. 7: To Preclude Testimony Concerning the Benefit of LED**

15  **Lights Other Than to Provide a Monetary Benefit to Pac Shores**

16          **DENIED.** Testimony concerning the benefits of LED lights is sufficiently relevant to be

17  admissible under Federal Rule of Evidence 401. Such testimony would provide useful background

18  information to orient the court, and it would be relevant to understanding the effect of the savings

19  condition in the financing term of the Retrofit Contract. Pac Shores contends that admitting

20  testimony on the benefits of LED lighting is likely to unfairly prejudice the court against Pac Shores

21  because Pac Shores refused to install environmentally-friendly LED lighting unless it was

22  profitable. The fact that the trial will now be a bench trial substantially mitigates Pac Shores'

23  concern. Nevertheless, the court also finds that the relevance of testimony concerning the benefits of

24  LED lighting is not substantially outweighed by the potential for unfair prejudice to Pac Shores.

25  UGS should limit testimony concerning the environmental benefits of LED lights to only the

26  testimony that is directly relevant to the issues in this case. Such testimony is not inadmissible under

27  Federal Rule of Evidence 403, and Pac Shores' Motion *in Limine* No. 7 is denied.

28

ORDER RE MOTIONS IN LIMINE
Case No. C-12-05613-RMW
RDS

1

**Pac Shores' Motion *in Limine* No. 8: To Exclude References to a "Hostile Takeover"**

2          **GRANTED.** Similarly to its Motion *in Limine* No. 7, Pac Shores' concern that a jury would

3     be prejudiced by references to the management change as a "hostile takeover" is substantially

4     mitigated now that this will be a bench trial. Still, the court grants Pac Shores' motion to exclude

5     references to a "hostile takeover." Such references are unfairly prejudicial to the extent that they

6     imply that Pac Shores' new, "hostile" management breached the Retrofit Contract when it

7     repudiated the Retrofit Contract shortly after gaining control. While "hostile takeover" is a term of

8     art, UGS and its witnesses may instead describe the change in management without reference to it

9     as a "hostile takeover." This ruling therefore avoids potential unfair prejudice without preventing

10    UGS from presenting its substantive arguments.

11         However, this ruling does not preclude UGS from showing that there was a sudden or

12    unexpected change in Pac Shores' ownership and management or that disagreement over

13    performing the LED retrofit with UGS contributed to the change in Pac Shores' ownership or

14    management.

15

16    **Pac Shores' Motion *in Limine* No. 9: To Exclude Parol Evidence that Contradicts the Terms of**

17    **the Written Retrofit Contract**

18         **GRANTED-IN-PART and DENIED-IN-Part.** Pac Shores moves to exclude parol

19    evidence as to three terms of the Retrofit Contract: (1) that it is Pac Shores' duty to obtain financing

20    and UGS's duty to help (as opposed to the interpretation that it is UGS's duty to obtain financing for

21    Pac Shores and Pac Shores' duty to help); (2) that the term "facilities" refers to four buildings and

22    the parking lot; and (3) that the six months given to UGS to commence the retrofit begins after Pac

23    Shores has obtained financing. The court addresses each term in order.

24         **GRANTED** as to evidence that it is Pac Shores' duty to obtain financing and UGS's duty to

25    help. The Retrofit Contract states that "[a]s part of the retrofit package, UGS, with the help of the

26    Client [Pac Shores], will work to obtain financing options . . . ." Dkt. No. 74, Venardi Decl. Ex. C,

27    Retrofit Contract, at 2.3. Pac Shores contends that this provision unambiguously states that it is

28    UGS's duty to obtain financing and it is Pac Shores' duty to help UGS obtain financing for Pac

United States District Court
For the Northern District of California

1    Shores. UGS responds that the contract language is ambiguous as to which party has the primary

2    duty to obtain financing. However, UGS somewhat misses the issue. Contrary to UGS's

3    characterization, the court in its Order Denying Pac Shores' Motion for Summary Judgment found

4    that the Retrofit Contract is ambiguous as to whether financing is a condition precedent to UGS's

5    performance. Dkt. No. 66, Order Denying Motion for Summary Judgment, at 6. The court denied

6    summary judgment because genuine issues of material fact remained over whether financing is a

7    condition precedent to UGS's performance of the retrofit. *Id.* at 6-7. The court went on to state that

8    "summary judgment is inappropriate because genuine issues of material fact persist over whether

9    Pac Shores acted in good faith when it allegedly refused financing for the LED retrofit project." *Id.*

10   at 7. Thus, the issue is not which party has the primary duty to work to obtain financing options as

11   UGS contends. The Retrofit Contract is clear on that issue: UGS must work to obtain financing

12   options, and Pac Shores must help. The basic issues are whether Pac Shores acted in good faith in

13   helping UGS obtain financing for Pac Shores, and whether Pac Shores rejected financing (and

14   eventually the entire contract) in good faith. Therefore, Pac Shores' motion is granted. UGS may not

15   offer evidence that Pac Shores had the primary duty to obtain financing. However, this order does

16   not preclude UGS from offering evidence that Pac Shores acted in bad faith in refusing to help UGS

17   obtain financing or in rejecting a financing option.

18          **DENIED** as to evidence that the term "facilities" refers to four buildings and the parking lot.

19   The Retrofit Contract states that "UGS will install a lighting system in Client's [Pac Shores']

20   facilities as detailed in Facilities to be Retrofitted as detailed and attached hereto as Exhibit B." Dkt.

21   No. 74, Venardi Decl. Ex. C, Retrofit Contract, at 2.1. It is undisputed that no Exhibit B was ever

22   created. Pac Shores argues that the term "facilities" in the above excerpt of the Retrofit Contract is

23   unambiguous, and is limited to only the locations audited pursuant to the Retrofit Contract—

24   Building 1700 and the parking lot. However, Pac Shores can point to nothing in the Retrofit

25   Contract indicating that "facilities" is limited to audited locations. In fact, the parties identify no

26   language at all in the body of the Retrofit Contract that further informs the meaning of the term

27   "facilities." Pac Shores uses the limited scope of the audit as support for a more limited meaning of

28   "facilities," and UGS presents witness testimony as support for its broader interpretation of

ORDER RE MOTIONS IN LIMINE
Case No. C-12-05613-RMW                          - 12 -
RDS

1    "facilities," specifically that Building 1700 and the parking lot were used as exemplars for the whole

2    project. As the parties subscribe different meanings to "facilities," each supported by some

3    evidence, the court finds that term "facilities" as used in the Retrofit Contract is ambiguous.

4    Consequently, parol evidence is admissible to aid in interpreting the Retrofit Contract. *See WYDA*

5    *Assocs. v. Merner*, 42 Cal. App. 4th 1702, 1710 (1996) ("when two equally plausible interpretations

6    of the language of a contract may be made . . . parol evidence is admissible to aid in interpreting the

7    agreement") (quoting *Walter E. Heller Western Inc. v. Tecrim Corp.*, 196 Cal. App. 3d 149, 158

8    (1987)).

9            **DENIED** as to evidence that the six months given to UGS to commence the retrofit begins

10   after Pac Shores has obtained financing. This question is linked to the underlying dispute over the

11   effect of the financing clause. If the financing clause is a condition precedent (or some other

12   preliminary obligation) to UGS's performance under the Retrofit Contract, UGS may be excused

13   from beginning the retrofit within six months if financing was still not obtained. The court has

14   already found that parol evidence is admissible to aid in resolving the question of whether financing

15   is a condition precedent to UGS's performance. *See* Dkt. No. 66, Order Denying Motion for

16   Summary Judgment, at 6-7.

17           Moreover, the "Time Line" provision in the contract states that "UGS agrees to commence

18   the retrofit within 6 months of this agreement." *See* No. 74, Venardi Decl. Ex. C, Retrofit Contract,

19   at 2.10. UGS contends that this language must be read in light of the financing condition and the

20   clause of the Retrofit Contract providing for an automatic extension of time for UGS in the event of

21   some other delay, meaning that the agreement is only complete once financing has been obtained.

22   *See id.* at 2.3 (financing condition), 2.11 (extension of time provision). Under this interpretation,

23   ambiguity exists as to whether the six month period for UGS to commence performance begins at

24   the time of the Retrofit Contract's signing, or whether it begins after Pac Shores has financing.

25           Finally, the fact that several exhibits to the Retrofit Contract were never created also

26   arguably indicates that the parties did not intend the time period for UGS's performance to begin

27   running at the time the Retrofit Contract was signed. The "agreement" as contemplated by the Time

28

1    Line provision may only have been complete once the additional exhibits described by the Retrofit

2    Contract were created.

3           Therefore, while the language of the Retrofit Contract states that UGS must begin

4    performance within six months of the agreement, ample other evidence demonstrates that the

5    meaning of this contractual language is ambiguous. As such, parol evidence is admissible to inform

6    the meaning of the Retrofit Contract. *See WYDA Assocs. v. Merner*, 42 Cal. App. 4th 1702, 1710

7    (1996) ("when two equally plausible interpretations of the language of a contract may be made . . .

8    parol evidence is admissible to aid in interpreting the agreement") (quoting *Walter E. Heller*

9    *Western Inc. v. Tecrim Corp.*, 196 Cal. App. 3d 149, 158 (1987)).

10

11   **Pac Shores' Motion *in Limine* No. 10: To Exclude Evidence of Conduct After June 21, 2011**

12          **DENIED.** Pac Shores moves to exclude all evidence of conduct after June 21, 2011, six

13   months after the Retrofit Contract was signed, claiming that because the Retrofit Contract states that

14   "UGS agrees to commence the retrofit within 6 months of this agreement," any evidence of conduct

15   after six months is irrelevant. However, conduct occurring more than six months after the Retrofit

16   Contract was signed is highly relevant to this case for several reasons. First, the parties dispute

17   whether financing for Pac Shores was a condition precedent to performance of the contract. Because

18   financing was delayed, UGS's commitment to perform within six months of the agreement may also

19   have been delayed. Second, the parties dispute the meaning of several provisions of the Retrofit

20   Contract. How the parties conducted themselves under the Retrofit Contract—including their

21   behavior more than six months after the Retrofit Contract's signing—is relevant to the court's

22   determination as to the meaning of the Retrofit Contract itself. Finally, UGS contends that the

23   Retrofit Contract provides UGS an automatic extension of time to perform in the event of a delay:

24   "In the event that any delay or variation is caused by any of such factors, a reasonable extension of

25   time for commencement and completion shall automatically be deemed to have been granted." Dkt.

26   No. 74, Venardi Decl. Ex. C, Retrofit Contract, at 2.11. The court may determine that delays caused

27   an automatic extension of time to have been granted to UGS. In that case, even under Pac Shores'

28

United States District Court
For the Northern District of California

1    logic that all evidence of conduct occurring after the time period for UGS's performance had run is

2    irrelevant, evidence of conduct occurring after June 21, 2011 is still relevant.

3

4    **Pac Shores' Motion *in Limine* No. 11: To Exclude Evidence that the Obtaining of Financing**

5    **Was Not a Condition Precedent to Performance Under the Retrofit Contract**

6         **DENIED.** Significant debate between the parties continues over how to characterize the

7    financing terms of the Retrofit Contract. Both parties may present testimony in support of their

8    respective positions and attempt to persuade the court to adopt their interpretations of the Retrofit

9    Contract. Contrary to what Pac Shores asserts, UGS is not bound for the rest of this litigation by a

10   single statement it made at the hearing on Pac Shores' motion for summary judgment. This is

11   especially true given that the statement was in response to a question raised by the court's tentative

12   ruling, and for which UGS had not been given substantial time to fully research the issue. Moreover,

13   Pac Shores states that it "now concedes that the obtaining of financing was a condition precedent to

14   performance of the Retrofit Contract," indicating that Pac Shores is also shifting from its position on

15   the issue at the summary judgment hearing. Pac Shores provides no authority for binding UGS to its

16   position at the summary judgment hearing while at the same time allowing Pac Shores to shift. Pac

17   Shores' Motion *in Limine* No. 11 is therefore denied.

18

19   **Pac Shores' Motion *in Limine* No. 12 (mistakenly labeled as Motion *in Limine* No. 13): To**

20   **Exclude Evidence of Lost Profits**

21        **DENIED.** Pac Shores' motion essentially asks the court to exclude all evidence that UGS's

22   lost profits were $975,510.33 because UGS has allegedly not yet presented any evidence that its lost

23   profits were $975,510.33. This motion is better made as a motion for judgment as a matter of law

24   after the evidence has been presented at trial. It appears that Pac Shores contends that UGS cannot

25   provide sufficient evidence to support its lost profits calculation. Rather than preemptively make

26   that determination, the court will hear the evidence UGS proffers at trial, and, in the event Pac

27   Shores brings a motion for judgment as a matter of law, the court will then analyze whether UGS

28   has sufficiently supported its lost profits calculation.

C.  SUMMARY OF MOTIONS *IN LIMINE*

Accordingly, the court rules as follows:

| Motion | Ruling |
| --- | --- |
| **UGS's Motion *in Limine* No. 1:** To Exclude Expert Witness Testimony of Bryan Burkhart | **DENIED** |
| **UGS's Motion *in Limine* No. 2:** To Exclude Expert Witness Testimony of Thomas Tarter | **GRANTED-IN-PART and DENIED-IN-PART.** Granted as to Mr. Tarter's opinion number 7, otherwise denied. |
| **UGS's Motion *in Limine* No. 3:** To Exclude Testimony of Buddy Zarbock and Matthew Burrows | **DENIED** |
| **UGS's Motion *in Limine* No. 4:** To Exclude Witnesses from the Courtroom Prior to Testifying | **GRANTED** |
| **Pac Shores' Motion *in Limine* No. 1:** To Exclude Testimony from William Moyer, Jim Helton and Bert Peinbauer that Mazuma Capital Offered a Loan to Pac Shores | **DENIED** |
| **Pac Shores' Motion *in Limine* No. 2:** To Exclude Evidence of Lost Profits on Loan Deferral Agreement | **DENIED** |
| **Pac Shores' Motion *in Limine* No. 3:** To Exclude Testimony from Jim Helton and Bert Peinbauer that Pac Shores Would Have Been Able to Secure a $2.2 Million Loan Over 6 Years With a Parent Company Guarantee | **DENIED** |
| **Pac Shores' Motion *in Limine* No. 4:** To Exclude Evidence of Lost Origination Fees | **DENIED** |
| **Pac Shores' Motion *in Limine* No. 5:** To Exclude Testimony from William Moyer re: Various Legal Conclusions | **DENIED** |
| **Pac Shores' Motion *in Limine* No. 6:** To Preclude Plaintiff's Rebuttal Experts from Testifying in Plaintiff's Case-in-Chief and to Limit Testimony Until After Defendant's Expert Has Testified in its Case | **GRANTED-IN-PART and DENIED-IN-PART.** Granted as to Mr. Tarter and Mr. Fried and denied as to Mr. Borgioli. |
| **Pac Shores' Motion *in Limine* No. 7:** To Preclude Testimony Concerning the Benefit of LED Lights Other Than to Provide a Monetary Benefit to Pac Shores | **DENIED** |
| **Pac Shores' Motion *in Limine* No. 8:** To Exclude References to a | **GRANTED** |

| "Hostile Takeover" | |
|---|---|
| **Pac Shores' Motion** *in Limine* **No. 9:** To Exclude Parol Evidence that Contradicts the Terms of the Written Retrofit Contract | **GRANTED-IN-PART and DENIED-IN-PART.** Granted as to evidence that it was Pac Shores' duty to obtain financing; otherwise denied. |
| **Pac Shores' Motion** *in Limine* **No. 10:** To Exclude Evidence of Conduct After June 21, 2011 | **DENIED** |
| **Pac Shores' Motion** *in Limine* **No. 11:** To Exclude Evidence that the Obtaining of Financing Was Not a Condition Precedent to Performance Under the Retrofit Contract | **DENIED** |
| **Pac Shores' Motion** *in Limine* **No. 12:** To Exclude Evidence of Lost Profits | **DENIED** |

Dated: June 9, 2014

*Ronald M. Whyte*

RONALD M. WHYTE
United States District Judge